**IN THE UNITED STATES DISTRICT COURT**

**FOR THE DISTRICT OF NEW MEXICO**

MARIA SANDOVAL,

        Plaintiff,

v.                                                             No. CIV 09-464 JEC/RHS

ULTRAMAIN SYSTEMS, INC. GROUP
LONG TERM DISABILITY PLAN and
HARTFORD LIFE AND ACCIDENT
INSURANCE COMPANY,

        Defendants.

**MEMORANDUM OPINION AND ORDER**

THIS MATTER is before the Court on Plaintiff Maria Sandoval's ("Sandoval") Motion to Permit Certain Limited Discovery, filed September 11, 2009. [Doc. Nos. 15, 16.] In addition to her motion, Sandoval provided a supporting declaration of counsel. Attached to the motion are 123 pages of exhibits, including proposed document requests and five proposed notices of Rule 30(b)(6) depositions. Attached to Sandoval's counsel's declaration are 198 pages, which constitute part of the almost 1500 page Administrative Record produced by Defendants. [Doc. Nos. 15, 17.]

On October 13, 2009, Defendants filed a response, with attachments, in opposition to Sandoval's motion. [Doc. 19.] On October 26, 2009, Sandoval filed a reply, along with a supplemental declaration of her attorney. [Doc. Nos. 20, 21.]

For the reasons explained below, the Court denies Sandoval's request for limited discovery.

**Background**

On May 11, 2009, Sandoval filed a Complaint for Declaratory Relief requesting that the Court require Defendant Hartford Life and Accident Insurance Company to pay long-term disability ("LTD") benefits under the terms of its ERISA Plan for a certain period. [Doc. 1.] The parties do not dispute that Defendant Ultramain Systems, Inc. sponsored the Plan for the benefit of its employees, of whom Sandoval was one. [Doc. 11, Joint Status Report, p. 2.] Sandoval applied for and received LTD benefits under the Plan. [Doc. 11, pp. 2-3.]

In addition, Sandoval submitted a claim for Social Security disability benefits, that was approved in June 2008. In early July 2008, Hartford informed Sandoval of its determination to end payment of LTD benefits to her. Plaintiff appealed, but the appeal was denied. [Doc. 11, p. 3.]

Sandoval contends that she continues to be entitled to LTD benefits under the Plan. She further claims that because Hartford is both the administrator and funding source for the Plan, a conflict of interest exists. More specifically, she argues that the Plan utilized medical experts who had a financial conflict of interest and did not provide a neutral independent review process. [Doc. 11, p. 4.]

Hartford argues that while it initially approved Sandoval's claim for LTD under the Plan, it later determined she no longer was eligible because she did not satisfy the Plan's definition of disability. In reaching its determination, Hartford states it reviewed medical documents concerning Sandoval's condition and contacted her treating physicians who indicated she was capable of returning to work. [Doc. 11, p. 5.]

After Sandoval appealed the claim denial, Hartford again reviewed medical records and obtained opinions of independent physicians who found that Sandoval was capable of working subject to certain limitations. Therefore, Hartford upheld its denial of LTD to Sandoval, based on

its review of the materials in the administrative record ["AR"] and the opinions of independent physicians. [Doc. 11, p. 5.]

Hartford further asserts that the Plan contains an express grant of discretionary authority to Hartford as the claim administrator, and that, therefore, the arbitrary and capricious standard of review applies to this case.  In answering the Complaint, Defendants asserted an overpayment counterclaim, arguing that the Plan provides that any monthly benefit payable to a participant will be reduced by the amount of any social security disability income benefits ("DIB") received. Because Sandoval allegedly received "DIB" after she received benefits from the Plan, Defendants argue she is obliged to repay the overpayments.

## Sandoval's Motion for Limited Discovery

Sandoval asserts that limited discovery is appropriate in this ERISA case because the discovery sought is directed towards Hartford's conflict of interest, Hartford did not produce the entire AR, and discovery is necessary to evaluate the counterclaim against Sandoval. [Doc. 16, p. 3.]

Defendants assert that the Plan provides Hartford with "full discretion and authority to determine eligibility for benefits and to construe and interpret all terms and conditions of the Policy." [Doc. 19, p. 3.] Thus, based on this express grant of discretionary authority, Defendants argue that the Court must review this case under the arbitrary and capricious standard of review, which typically means that the federal courts are limited to a review of the AR – the materials compiled by the administrator in the course of making the decision. [Doc. 19, p. 4.] Moreover, Defendants state that Sandoval does not appear to dispute the application of the arbitrary and capricious standard of review to this case. [Doc. 19, p. 3.]

In her reply, Sandoval contends that when abuse of discretion review applies, a plaintiff is entitled to conduct discovery relevant to the scope and extent of a plan administrator's conflict of interest. [Doc. 20, p. 2.] Sandoval argues that the "scope and extent" of Hartford's conflict of interest is not in the AR because Hartford withheld claim manuals and claim standards, and provided no information regarding its "so-called independent medical examiners" and whether they truly were independent. Thus, Sandoval asserts she has the need and right to conduct discovery as to these issues.

## **Examples of Discovery Sought**

As evidenced by lengthy declarations and attachments of Sandoval's counsel, along with the proposed document requests and five notices of Rule 30(b)(6) depositions, Sandoval's discovery requests cannot be characterized as "limited." Rather, they are extensive. Although Sandoval limits some of her requests to the "relevant period," *i.e.,* from 2006 through 2009, the discovery she seeks is wide-reaching. For example, she asks for all documents not in the AR that set forth or constitute reasonable procedures governing the filing of benefit claims, notification of benefit determinations and appeal of adverse benefit determinations; administrative processes and safeguards designed to insure and verify that benefit claims determinations are made in accordance with Plan documents; and, administrative processes and safeguards that have been applied consistently with respect to similarly situated claimants.

Sandoval also requests all documents not in the AR concerning the training and experience of the medical professionals who offered opinions in this case, invoices for their services, time spent by the medical care professionals, along with their billing rates, all contracts between the various medical professionals and entities through which the professionals were provided, and all contracts, instructions, guidelines and standards between Hartford and the entities providing the medical

professionals.  She requests all documents showing fees paid by Hartford to these entities for a period of four years.

Regarding the Rule 30(b)(6) deposition notices, Sandoval asks for any information the medical provider received from someone other than counsel, related to this case, whether the physician was deposed before in his or her capacity as a Hartford employee or related to services provided to Hartford, dates, identities of the cases, identities of the attorneys involved, along with summaries of testimony given by the medical providers in other cases.  Some of these inquiries do not appear to be limited to any period of time or location  Sandoval also requests broad information about the medical professional's complete education, dating from high school to medical school, pre-Hartford employment, employment with Hartford, training received from Hartford, and manuals regarding performance of job duties with Hartford.  Sandoval asks for statistics from each medical care provider regarding the number of LTD claims submitted to him or her during 2006-2009, how many claims were granted or denied, and the steps, if any, that the provider took to reduce potential bias of the claims personnel.

Sandoval requests information from each medical provider regarding the number of claimants seeking LTD that arose from alleged disabling conditions similar to those at issue in Sandoval's case.  She also asks for policies and procedures of the health care providers regarding weight to be accorded to Social Security Administration determinations and findings.

### **Legal Standard**

> The Employee Retirement Income Security Act of 1974 (ERISA) permits a person denied benefits under an employee benefit plan to challenge that denial in federal court.  Often the entity that administers the plan, such as an employer or an insurance company, both determines whether an employee is eligible for benefits and pays benefits out of its own pocket.  We here decide that this dual role creates a conflict of interest; that a reviewing court should consider

>    that conflict as a factor in determining whether the plan administrator
>    has abused its discretion in denying benefits; and that the significance
>    of the factor will depend upon the circumstances of the particular
>    case.

Metropolitan Life Ins. Co. v. Glenn, __ U.S. __, 128 S.Ct. 2343, 2346 (2008) (internal citations omitted).

In cases, such as this, where an ERISA plan gives the administrator discretionary authority to interpret the terms of the plan and to determine eligibility for benefits, the Tenth Circuit Court of Appeals consistently applies an arbitrary and capricious standard of review.  *See* Fought v. UNUM Life Ins. Co. of Am., 379 F.3d 997, 1002-03 (10th Cir. 2004)[1] (deciding that when a plan administrator operates under a conflict of interest, an additional reduction in deference is appropriate; in such cases, the plan administrator bears the burden of proving the reasonableness of its decision in accordance with the court's traditional arbitrary and capricious standard); Caldwell v. Life Ins. Co. of N. Am., 287 F.3d 1276, 1283 (10th Cir. 2002) (when party is both administrator and payor or insurer of plan, an inherent conflict exists and the court's review is less deferential).

Under the arbitrary and capricious standard, the court's review and thus, discovery, generally is limited to the administrative record.  *See* Fought, 379 F.3d at 1003 (finding such review typically is "limited to the administrative record – the materials compiled by the administrator in the course of making his decision.")  *See also*  Roach v. Prudential Ins. Brokerage, Inc., 62 F. App'x 294, 298 (10th Cir. 2003) (same).  Even in cases of *de novo* review, which this case is not, it is "the unusual

---

[1] Fought was overruled in part by Glenn.  *See* Holcomb v. Life Ins. Co. of Am., 578 F.3d 1187, 1192-93 (10th Cir. 2009) (noting that in pre-Glenn cases where a plan administrator operated under a conflict of interest, the burden shifted to the plan administrator to establish by substantial evidence that the denial was not arbitrary and capricious.  Glenn rejected that approach, holding it is not necessary for courts to create special burden of proof rules.  Glenn, instead, embraced a combination-of-factors method of review.

case in which the district court shall allow supplementation of the record." Hall v. UNUM Life Ins. Co. of Am., 300 F.3d 1197, 1203 (10th Cir. 2002).

> If a plan participant fails to bring evidence to the attention of the administrator, the participant cannot complain of the administrator's failure to consider this evidence. [A plaintiff] is not entitled to a second chance to prove his disability. The district court's responsibility lay in determining whether the administrator's actions were arbitrary or capricious, not determining whether [the plaintiff] was, in the district court's view, entitled to disability benefits. In effect, a curtain falls when the fiduciary completes its review, and for purposes of determining if substantial evidence supported the decision, the district court must evaluate the record as it was at the time of the decision.

Roach, 62 F. App'x at 296. Thus, it is the rare case where the court permits the parties to conduct discovery outside the AR – the exception, rather than the rule. *See* Hall, 300 F.3d at 1202, 1203 (discussing *de novo* review).

Sandoval relies heavily on the recent Supreme Court decision in Glenn. Sandoval concedes that Glenn did not address discovery issues in ERISA cases. In Glenn, the Supreme Court focused on the question of "how" a conflict of interest should be taken into account on judicial review of a discretionary benefit determination. Glenn, 128 S.Ct. at 2350. The Supreme Court declined to find a change in the standard of review was required or that near universal review by judges *"de novo, i.e.,* without deference" was the answer. Id. *See* Waugh v. The Williams Cos., Inc. Long Term Disability Plan, 2009 WL 1090069 at *2 (10th Cir. Apr. 23, 2009) (unpublished) ("The Court did not broaden the standard of review" in Glenn).

The Glenn Court reiterated:

> [C]onflicts are but one factor among many that a reviewing judge must take into account. Benefits decisions arise in too many contexts, concern too many circumstances, and can relate in too many different ways to conflicts – which themselves vary in kind and in

7

>degree of seriousness – for us to come up with a one-size-fits-all procedural system that is likely to promote fair and accurate review.
>
>. . .
>
>[W]hen judges review the lawfulness of benefit denials, they will often take account of several different considerations of which a conflict of interest is one.  This kind of review is no stranger to the judicial system.  Not only trust law but also administrative law can ask judges to determine lawfulness by taking account of several different, often case-specific, factors, reaching a result by weighing all together.

Id. at 2351 (internal citations omitted).

>. . .
>
>[A]ny one factor will act as a tiebreaker when the other factors are closely balanced, the degree of closeness necessary depending upon the tiebreaking factor's inherent or case-specific importance.  The conflict of interest at issue here, for example, should prove more important (perhaps of great importance) where circumstances suggest a higher likelihood that it affected the benefits decision, including, but not limited to, cases where an insurance company administrator has a history of biased claims administration.

Id.

The Court determines that this analysis in Glenn has little to no bearing on what amount of discovery is allowed in cases such as this.  Instead, the Supreme Court in Glenn merely explained the type of review that allows judges to take account of various case-specific factors.  The Court further observed that special procedural rules focusing on the evaluator/payor conflict were unnecessary.  Indeed, they "would create further complexity, adding time and expense to a process that may already be too costly for many of those who seek redress." Glenn, 128 S.Ct. at 2351.

## Analysis

Sandoval argues that the Supreme Court's decision in Glenn changes the general rule that discovery is prohibited, yet Sandoval admits that Glenn is not a discovery case.  *See, e.g.,* Dubois

v. UNUM Life Ins. Co. of Am., 2008 WL 2783283 at *1 (D. Me Jul. 14,2008) ("Glenn was not a case about discovery and does not suggest that discovery automatically should be permitted if such a conflict exists.")  Nonetheless, Sandoval asserts that the rationale of Glenn "compels that discovery be permitted on conflict of interest issues.  Any other construction of Glenn renders it 'sound and fury that signifies nothing.'  Therefore, in light of Glenn[,] pre-Glenn Tenth Circuit discovery cases in ERISA matters are no longer good law and should not be followed." [Doc. 20, p. 1.]

The Court finds no binding legal authority to support Sandoval's argument, nor did she provide any such citations.  Instead, Sandoval asserts that "the precise issue" is presently pending before the Tenth Circuit in Murphy v. Deloitte & Touche Group, et. al., 09-2028, which was argued September 23, 2009 by defense counsel in this case and Sandoval's counsel's partner in this case.

In Murphy, the plaintiff sought "limited discovery," which this Court also characterized as "wide-spread discovery."  Murphy v. Deloitte & Touche, No. 08-25 RHS/LFG [Doc. 39] (D.N.M. Aug. 20, 2008), *objections overruled* [Doc. 56] (D.N.M. Oct. 24, 2008).  This Court granted summary judgment in favor of Defendants in Murphy, and the case is on appeal on a number of grounds.  *See* Murphy, 2009 WL 424501 (D.N.M. Jan. 21, 2009).

In Murphy, the Court reviewed several policy reasons that supported its decision to deny the plaintiff's request for "limited discovery."  For example, the Court noted that ERISA "was intended to provide an efficient, economical and expeditious means of determining eligibility for benefits; and, at the same time, to enable employers 'to establish a uniform administrative scheme, which provides a set of standard procedures to guide processing of claims and disbursement of benefits.'"  Murphy, No. 08-25, Doc. 39, p. 5 (internal citations omitted).  As part of the congressional plan to

9

simplify and expedite this process, an ERISA case is submitted to the court upon the administrative record because it contains the evidence and arguments before the decision maker.  Id.

This Court further observed that under Tenth Circuit law, discovery generally is not permitted in ERISA cases, "as there is a complete administrative record and the claimant has the opportunity to supplement the record."  Id. (internal citations omitted).  The Court noted that while some discovery may be allowed to determine if there is a conflict, discovery generally is not necessary if the conflict is apparent on the face of the record.  In other words, where the conflict of interest is apparent, such conflict triggers a less deferential standard of review.

However, an apparent conflict of interest does not necessarily compel further discovery.  Murphy, at pp. 7-8.  Instead, the "conflict compels the Court's review to be 'a little more searching . . . and the Court is not as quick to defer to the administrator's discretion.'  There is no need for discovery if Metlife has a conflict.  Metlife concedes the point." Id. at p. 8.

Like Murphy, Defendants here concede that Hartford has full discretion and authority to determine the eligibility for benefits and to construe and interpret all terms and conditions of the Policy.  Moreover, Defendants admit there is a conflict of interest but explain that, under Glenn, it is but one factor that the court considers in reviewing whether the denial of benefits was arbitrary and capricious. [Doc. 19, p. 16.]

Sandoval's arguments in support of opening up this case to extensive discovery are unavailing.  For example, she claims, similar to Murphy, that the use of independent physicians to review claims means that the opinions of the physician were "bought and paid for."  In other words, the independent physician who receives a fee for services could not possibly be impartial or honest.  The Court is unpersuaded by this argument. *See, e.g.,* Broeski v. Provident Life & Accident Ins. Co., No. 06 C 3836, 2007 WL 1704012 at *2 (N.D. Ill. Jun. 8, 2007) ("The fact that a doctor is

regularly consulted by an insurance company 'or defense interests more generally' does not, *ipso facto*, render the doctor biased.")

Moreover, to the extent that Sandoval argues she is entitled to some of the requested discovery in part because of the favorable social security ruling, the Court notes that there are material differences between the Social Security disability program and ERISA benefit plans. Benson v. Prudential Financial, Inc., 2008 WL 6034961, at *8 (D.N.M. July 9, 2008). "[A] finding of disability by the Social Security Administration does not require a finding of disability under an ERISA disability plan." Id. (internal citation omitted). At most, it is but another factor to be weighed in determining whether the denial of benefits was arbitrary and capricious.

In addition, allowing discovery in this case conflicts with an expeditious and efficient process for reviewing the administrator's decision. For reasons similar to those stated in Murphy, the Court declines to grant Sandoval's request. To do otherwise, submits this ERISA case to full-blown litigation. Granting Sandoval's extensive and wide reaching discovery requests would essentially pull the rug out from under the ERISA framework, thereby requiring the entire case to be discovered and tried anew in district court. Congress has shown no indication this is what it intended to do in enacting the comprehensive federal legislation.

Finally, the Court determines that as of this date, Tenth Circuit law generally limits the court's review of a plan administrator's decision to the AR. Weber v. GE Group Life Assurance Co., 541 F.3d 1002, 1011 (10th Cir. 2008) ("In reviewing a plan administrator's decision under the arbitrary and capricious standard, the federal courts are limited to the administrative record – the materials compiled by the administrator in the course of making his decision.") Thus, discovery is limited to the production of the administrative record. Sandoval did not satisfy her burden of proof

in demonstrating that additional discovery is required in this case or that limited discovery is required to demonstrate bias on the part of the administrator.

    IT IS THEREFORE ORDERED that Sandoval's Motion to Permit Certain Limited Discovery [Doc. 15] is DENIED.

*Robert Hayes Scott*
ROBERT H. SCOTT
UNITED STATES MAGISTRATE JUDGE